UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MICHAEL QUINT and VICKI QUINT,

        Plaintiff,

v.

HENRY BUTTS, RONALD A. KRUEGER,
CITY OF WATERTOWN, and
$45,000 UNITED STATES CURRENCY,

        Defendant.

Case No. 11-CV-905-JPS

ORDER

On September 27, 2011, the plaintiffs, Michael Quint ("Quint") and his wife, Vicki Quint, filed a complaint against defendants Henry Butts ("Butts"), Ronald Krueger, City of Watertown, and $45,000 United States Currency, asserting claims for the deprivation of Quint's civil rights under 42 U.S.C. § 1983, as well as various state law claims, all stemming from plaintiff's resignation from his position as a firefighter with the City of Watertown and subsequent employment search. (Docket #1). In response, defendant Butts filed a motion to dismiss, arguing that plaintiffs' complaint fails to state a claim under § 1983. The parties have fully briefed the court on the relevant issues related to the motion to dismiss, and, as a result, the court is prepared to rule on the motion.

1.    Legal Standard

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) challenges the sufficiency of the plaintiff's complaint by asserting that the claimant failed to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), claimant's complaint must allege facts sufficient to "state a claim for relief that is plausible on its

face." *Justice v. Town of Cicero*, 557 F.3d 768, 771 (7th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)). Pleaders must "plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 1129 S. Ct. at 1940. The court construes the complaint in the light most favorable to the claimant, accepts as true all well-pleaded facts alleged, and draws all possible inferences in the claimant's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). Yet, the court need not accept as true "legal conclusions." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Indeed, "[a] ruling concerning the legal sufficiency of the complaint is an appropriate determination to make in response to a motion to dismiss." *Sanner v. Board of Trade of City of Chicago*, 62 F.3d 918, 924 (7th Cir. 1995) (citing *Gomez v. Illinois State Board of Education*, 811 F.2d 1030, 1039 (7th Cir. 1987)).

2.  Background

Quint was the Assistant Chief of the Watertown Fire Department ("WFD") for eight years before his resignation in 2010. (Compl. ¶¶ 7, 13). Defendant Butts was the Chief of the WFD while Quint was employed there. (Compl. ¶ 7). In 2009, Quint filed a complaint against Butts with the City Police and Fire Commission alleging misconduct by Butts. (Compl. ¶ 12). The City filed countercharges against Quint. (*Id.*). After an investigation, and in order to settle the dispute, Quint, Butts, and the City entered into a separation agreement on January 8, 2010. (Compl. ¶ 13). In other words, Quint offered to resign his employment in exchange for a set of conditions and guarantees by the City and Butts. (Compl. ¶ 14). The separation agreement provided that: (1) a letter of reference from the City's Mayor would be the sole reference for Quint's subsequent employment search; (2)

verbal references would be consistent with that letter; and (3) all parties were to avoid negative comments about the other parties. (*Id.*).

In July of 2010, Quint applied for a fire chief position in Marshalltown, Iowa. (Compl. ¶ 17). The Marshalltown, Iowa, newspaper published an article on July 16, 2010, announcing three final candidates for fire chief, one of whom was Quint. (*Id.*). Quint alleges that he had a positive reaction from the City and a good chance of being hired. (Compl. ¶ 18). On July 27, 2010, an article appeared in the newspaper with information about the "Watertown situation." (*Id.*). Quint suspected Butts provided information to the newspaper. (*Id.*). Quint was not hired in Marshalltown, Iowa. (*Id.*).

Next, Quint applied for employment as fire chief in Benton, Illinois. (Compl. ¶ 19). Again, he was a finalist for the position, his name was announced in the local newspaper and posted on the internet, and Quint was eventually offered the position. (*Id.*). However, soon thereafter, the Benton City Council and the Mayor received anonymous letters which allegedly stated the following:

> We understand that you are considering hiring Mr. Michael Quint to be the Fire Chief in your City. Before you make that decision we strongly recommend that you make a public records request of our Fire Chief asking for copies of the charges he filed against Quint and also for copies of all of the documentation that prove the charges were true and then you will learn the real reasons why Quint had to leave Watertown. Enclosed is a newspaper article from Marshalltown, Iowa and what they did when they found out the truth. Don't make the same mistake our Chief did by hiring him.

(*Id.*). The Council then voted to rescind the offer of employment to Quint and hired someone else. (Compl. ¶ 20). Quint also applied for positions with the Cheyenne, Wyoming, Fire Department and the Chippewa Falls, Wisconsin,

Fire Department. (Compl. ¶ 22). Once his identity as a finalist for these positions became public, anonymous letters were sent to members of the hiring authorities, urging the employers to conclude that Quint committed misconduct in Watertown. (*Id.*).

As a result, Quint now claims that defendant Butts used a covert campaign to infringe Quint's liberty and property interests under color of law and in violation of Quint's constitutional rights. (Compl. ¶¶ 28-34). Quint and his wife also allege various state law claims including: (1) bad faith job reference in violation of Wisconsin law; (2) breach of contract; and (3) loss of society and companionship. (Compl. ¶¶ 38-45). Lastly, plaintiffs have also named $45,000 of United States Currency as a defendant in this action in an attempt to attach these funds to assure they are available for payment of any judgment against the defendants. (Compl. ¶¶ 46-47).

3. Discussion

   3.1 Property Interest

First, Quint's complaint alleges that he was deprived of a property interest in a "positive job reference" or, alternatively, "his reputation concerning his job performance" without due process of law. (Compl. ¶ 33). This claim fails, as Quint has no property interest in a positive job reference or in his reputation concerning his job performance. The concept of property as it relates to public employment is usually defined in terms of an employee's legitimate claim of entitlement to his job. *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972); *Perry v. Sindermann,* 408 U.S. 593, 602 (1972). However, here, Quint's complaint alleges a legitimate claim of entitlement to a good faith job reference from his former employer, not the job itself. There is no authoritative case law recognizing such an interest. Indeed,

Quint points to no authority supporting his claim, save Wisconsin Statute § 895.0575, a statute that allegedly creates liability for employers if they provide a job reference concerning current or former employees that is not made in good faith. However, this statutory reference is not accurate.

Perhaps Quint meant to refer to Wis. Stat. § 895.487(2) instead, which establishes a presumption that an employer responding to a reference request is acting in good faith and is immune from all civil liability that may result from providing that reference to a prospective employer. *Id.* The statute also provides that the presumption of good faith may be lost if there is clear and convincing evidence that the employer knowingly provided false information, made the reference maliciously, or made the reference in violation of Wisconsin's blacklisting statute. *Id.* Yet, even if Quint meant to refer to this statute, rather than the non-existent § 895.0575, the statute does not appear to apply in this case, as neither Quint nor any of his prospective employers *requested* a job reference from Butts or the City of Watertown. Instead, the complaint alleges that it was Butts who took the initiative in contacting Quint's prospective employers and in providing them with purportedly false information concerning Quint. As such, it does not appear that Wis. Stat. § 895.487(2) is implicated because the statute applies only to requests for job references made by the prospective employer or employee.

However, even assuming that the statute applies to the circumstances of this case, it does not necessarily create a property interest in a good faith job reference or in a reputation concerning job performance. For one thing, reputation is not "property" within the meaning of constitutional due process. *Paul v. Davis*, 424 U.S. 693, 711-12 (1976). Moreover, the statute at issue is essentially a codification of Wisconsin's common law conditional

privilege regarding defamation claims arising out of employment references. *See Gibson v. Overnite Transp. Co.*, 267 Wis.2d 429, 671 N.W.2d 388 (Wis. Ct. App. 2003). Thus, the state statute does not technically create a legitimate claim of entitlement for an employee, as is required for the existence of a substantive property interest. *Roth,* 408 U.S. at 577. Instead, the statute merely creates a conditional privilege for the employer.

Even if the court were to assume that Quint alleged he was deprived of his property interest in his employment rather than his reputation or a good faith job reference, Quint would still have failed to state a claim. That is because Quint entered into a separation agreement, voluntarily resigning his position. Thus, he relinquished any property interest in his job at the time this agreement became effective in January of 2010. Accordingly, he chose not to avail himself of any procedural due process safeguards he may otherwise have been entitled to if he was fired. *See Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995) (finding that an employee who resigns has decided not to avail himself of procedural due process protections). In his response brief, Quint attempts to argue that he was deprived of his property interest in his employment because Butts induced him to resign under false pretenses – namely, by promising not to engage in a "smear campaign" against Quint in Quint's search for future employment. In other words, Quint contends that Butts coerced his resignation. In turn, Quint argues that he was entitled to some form of due process. While a coerced resignation, like constructive discharge, is an independent wrong and does not justify withholding due process of law to which a public employee is entitled, *Graehling,* 58 F.3d at 298, Quint did not sufficiently allege in his complaint that he was coerced into resigning or that his

resignation was otherwise involuntary. Accordingly, the court finds that the facts alleged by Quint do not show that he has been deprived of property without due process of law. Therefore, his claim in this respect shall be dismissed.

    3.2    Liberty Interest

Even though Quint did not have a property interest in a positive job reference, he did have a liberty interest in pursuing his occupation. *See Schware v. Board of Bar Examiners*, 353 U.S. 232, 238–39 (1957). However, the court also finds that Quint has failed to state a claim for violation of his liberty interest.

Because Quint had an occupational liberty interest, the City was required to afford Quint due process if, "in the process of discharging him, it publicly charged him with immorality, dishonesty, or the like, or otherwise stigmatized him in a way that foreclosed future employment opportunities." *Fittshur v. Village of Menomonee Falls*, 31 F.3d 1401, 1409 (7th Cir. 1994) (citing *Paul v. Davis,* 424 U.S. at 701). The problem here is that, even assuming Quint was stigmatized by the comments allegedly made by Butts to prospective employers, Quint was not discharged or demoted such that procedural due process protections were implicated. As discussed above in the context of property interests, Quint entered into a separation agreement, voluntarily resigning his position. Thus, he relinquished any liberty interest in his job at the time this agreement became effective in January of 2010. *See Siegert v. Gilley*, 500 U.S. 226, 234 (1991) (finding no deprivation of plaintiff's occupational liberty interest because plaintiff voluntarily resigned). Quint appears to assume that the existence of the separation agreement distinguishes his case from others in which courts have dismissed a plaintiff's

liberty interest claim because the plaintiff chose to resign. *See id.* Yet, this court sees no difference between an employee who has entered into a voluntary separation agreement and one who resigns voluntarily. They are one and the same, as both employees are free to resign or not. Indeed, Quint's argument in this respect amounts to no more than an attempt to constitutionalize a state law breach of contract claim relating to the separation agreement. As such, it will not be entertained by this court.

Perhaps anticipating this, Quint also attempts to argue that his resignation was involuntary because "Butts had no intention of honoring the terms of the separation agreement." (Pl.'s Br. at 5). Yet, Quint failed to allege any such facts in his complaint. And, even assuming his resignation was involuntary, the stigmatizing statements were not made in the context of, or incident to, his termination of employment, and thus, his claim cannot stand. *See Siegert*, 500 U.S. at 234; *see also Klug v. Chicago School Reform Bd. of Trustees*, 197 F.3d 853, 859 (7th Cir. 1999) ("One must show both a stigma and a failure to rehire. The infliction of a stigma to reputation accompanied by a failure to rehire (or, a fortiori, by a discharge) states a claim for deprivation of liberty without due process within the meaning of the Fourteenth Amendment."); *McMath v. City of Gary*, 976 F.2d 1026, 1032 (7th Cir. 1992) ("*Siegert*…emphasized that the publication [of stigmatizing statements] must occur in the context of termination"); *Wroblewski v. City of Washburn*, 965 F.2d 452, 456 (7th Cir. 1992) (observing that *Siegert*'s "requirement that the defamatory statement be 'incident to' the adverse employment action is a strict one"). In this case, the alleged defamation was not uttered incident to the termination of Quint's employment by the WFD. Rather, the statements were made months after the parties signed the separation agreement. Simply

because the statements could be said to have breached the separation agreement does not mean the statements were made incident to or in the context of Quint's termination. At most, what Quint has alleged is a state law defamation claim or breach of contract claim, not a constitutional violation. Accordingly, the court will dismiss Quint's claim in this respect.

### 3.3 Substantive Due Process

Lastly, Quint urges that his substantive due process rights were violated. Specifically, Quint contends that Butts's conduct and the City's indifference to that conduct deprived him of substantive due process, as this is the sort of governmental power that "shocks the conscious" under *Rochin v. California*, 342 U.S. 165, 172 (1952).

The "substantive" component of the due process clause forbids "arbitrary infringements of certain personal immunities that are 'implicit in the concept of ordered liberty,'" *Wroblewski v. City of Washburn*, 965 F.2d at 457 (quoting *Palko v. Connecticut*, 302 U.S. 319, 325 (1937)), or that "shock the conscience." *Rochin v. California*, 342 U.S. at 172. The Supreme Court urges courts to use caution and restraint in applying substantive due process. *See Regents of Univ. of Michigan v. Ewing,* 474 U.S. 214, 225–26 (1985). The scope of substantive due process has been severely limited by the courts. *See Saukstelis v. City of Chicago,* 932 F.2d 1171, 1173 (7th Cir. 1991) ("Outside the realm of personal liberties, substantive due process may be a misnomer for the enforcement of rights expressly established in the Constitution and applied to the states through the fourteenth amendment").

Although Quint contends that a substantive due process right is at issue, he fails to identify the nature of such a right or to show that he has an entitlement to such a right. *See New Burnham Prairie Homes, Inc. v. Village of*

*Burnham,* 910 F.2d 1474, 1479 (7th Cir. 1990) (citing *Roth,* 408 U.S. at 577) ("Before a party may assert a due process argument—procedural or substantive—it must establish that it has a 'legitimate claim of entitlement' to the right being asserted"). It is not enough to allege that governmental actions "shock the conscious." A plaintiff must also allege that the government action impinged a fundamental liberty or property interest. *Belcher v. Norton,* 497 F.3d 742, 754 (7th Cir. 2007). To the extent Quint alleges that the defendants' actions deprived him of an occupational liberty interest, the court must dismiss his claim, as occupational liberty is not protected by substantive due process. *Illinois Psychological Ass'n. v. Falk,* 818 F.2d 1337, 1343-44 (7th Cir. 1987). To the extent Quint may be arguing that he had a fundamental right to enforcement of the parties' separation agreement, the court must also dismiss his claim, as Quint has not established that such a fundamental right exists. Ultimately, Quint's argument in this respect amounts to no more than a state law breach of contract claim. The facts alleged by Quint cannot be held to state a claim for denial of a constitutional right. Accordingly, the court will dismiss all of Quint's federal law claims with prejudice.

The only basis for the court to exercise jurisdiction over plaintiffs' remaining state law claims is the court's supplemental jurisdiction as provided by 28 U.S.C. § 1367(a). As a general rule, when all federal claims have been dismissed prior to trial and only pendant claims remain, "the federal court should relinquish jurisdiction over the remaining pendant state claims." *Williams v. Rodriguez,* 509 F.3d 392, 404 (7th Cir. 2007). Therefore, the court declines to exercise supplemental jurisdiction over plaintiffs' remaining state law claims against the defendants. Instead, the court will dismiss these

claims without prejudice, allowing the plaintiffs the opportunity to present these claims to the state court if they so desire.

Accordingly,

IT IS ORDERED that defendants' motion to dismiss (Docket #9) be and the same is hereby GRANTED;

IT IS FURTHER ORDERED that plaintiffs' federal law claims, as contained in Counts One and Two of the Complaint, be and the same are hereby DISMISSED with prejudice; and

IT IS FURTHER ORDERED that plaintiffs' remaining state law claims, as contained in Counts Three through Six of the Complaint, be and the same are hereby DISMISSED without prejudice.

The clerk of court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 16th day of February, 2012.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge